# EXHIBIT A

Received 06-23-2017
FILED
07-10-2017
Clerk of Circuit Court
Kenosha County
2016CV001514

STATE OF WISCONSIN          :          CIRCUIT COURT          :          KENOSHA COUNTY

---

REGULATORY COMPLIANCE
ASSOCIATES, INC.

          Plaintiff,

v.

KIMBERLEE WASHBURN,

          Defendant.

Case No. 16-cv-1514

Case Code(s):  30701, 30704, 30303

Honorable Chad G. Kerkman

---

## DEFAULT JUDGMENT AND PERMANENT INJUNCTION

The Court heard the Plaintiff's, Regulatory Compliance Associates, Inc. ("RCA" or "Plaintiff"), Motion for Default Judgment against Defendant, Kimberlee Washburn ("Washburn" or "Defendant") on June 23, 2017.  The Court has considered oral argument, the pleadings, affidavits, declarations and all other documents and submissions of record, and has determined that due process has been served.  Therefore, **IT IS HEREBY ADJUDGED:**

1.      Defendant is in default and the allegations of the Complaint are deemed admitted;

2.      The Court finds that the terms of the Confidentiality Agreement, attached to the Plaintiff's First Amended Complaint, are valid and enforceable;

3.      Judgment is entered in favor of RCA and against Washburn on Counts III, IV and V of the Plaintiff's First Amended Complaint in the amount of $67,990.00;

4.      Judgment is entered in favor of RCA and against Washburn for punitive damages in the amount of $135,980.00; AND

5.      Judgment is entered in favor of RCA for its cause of action for Injunctive Relief, and the Court's Order for Preliminary Injunctive Relief dated February 17, 2017 is hereby converted to a permanent injunction, which, *inter alia,* enjoins Washburn from transferring,

copying, distributing, reproducing, discussing, sharing, and/or otherwise disseminating the

Confidential Information and/or the Confidential Personalty, as described in Plaintiff's Motion

for Preliminary Injunction filed in the above-captioned action, in any form or by any medium to

any parties other than RCA.


Dated June\_\_\_\_, 2017


BY THE COURT:


_____

Honorable Chad G. Kerkman
Kenosha County Civil Court Judge


Electronically signed by Judge Chad G. Kerkman, Circuit Court Branch 8

Circuit Court Judge

07/10/2017

This is a final order for purposes of appeal.


Drafted by:
C. Douglas Moran (Wis. Bar No. 1091893)
**CARLSON DASH, LLC**
10411 Corporate Dr., Ste. 100
Pleasant Prairie, WI 53158
Telephone: 262-857-1600
Facsimile: (312) 382-1619
cdmoran@carlsondash.com

# EXHIBIT B

CIRCUIT COURT            KENOSHA COUNTY            STATE OF WISCONSIN

Regulatory Compliance Associates Inc            **AUTHENTICATION OF**
**COURT RECORD**

vs

Kimberlee Washburn                            Court file  16CV1514

I, REBECCA MATOSKA-MENTINK, Clerk of Circuit Court  in and for said County of  Kenosha and State of Wisconsin do hereby certify that I have compared the annexed copy of the **JUDGMENT** with a record on file in the office; that it is a true transcript therefrom and of the whole thereof as the same remains of record in my office and in legal custody.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of said Court this  /  day of July, 2017

_____
Clerk of Circuit Court

I, HON. Judge Chad G. Kerkman, Circuit Judge for Kenosha County, do hereby certify that REBECCA MATOSKA-MENTINK  who has subscribed the above attestation and affixed the seal of said Court, was at the date thereof, and still is the CLERK OF CIRCUIT COURT and  duly authorized to act in that behalf, and that said attestation is in due form.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name, this 17 day of July, 2017

_____
CIRCUIT COURT JUDGE

I, REBECCA MATOSKA-MENTINK, Clerk of Circuit Court  in and for said County of Kenosha, do hereby certify that the Honorable Chad G Kerkman, whose name is subscribed to the foregoing Certificate of Attestation, now is, and was, at the time of signing and sealing the same, Judge of said Circuit Court of Kenosha, County, and was duly elected, commissioned and qualified to office; that full faith and credit are, and of right out to be given to all his Official acts as such, in all Courts of record in the United States and elsewhere; that I am familiar with the handwriting of said Judge; that his signature thereto is genuine, and that his attestation is in due form of law and by the proper officer.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the Seal of said Court, at the City of Kenosha, in said County, this  /  day of July 2017.

_____
Clerk of Circuit Court

Received 06-23-2017
FILED
07-10-2017
Clerk of Circuit Court
Kenosha County
2016CV001514

STATE OF WISCONSIN      :      CIRCUIT COURT      :      KENOSHA COUNTY

---

REGULATORY COMPLIANCE
ASSOCIATES, INC.

     Plaintiff,

 v.

KIMBERLEE WASHBURN,

     Defendant.

Case No. 16-cv-1514

Case Code(s): 30701, 30704, 30303

Honorable Chad G. Kerkman

---

## DEFAULT JUDGMENT AND PERMANENT INJUNCTION

The Court heard the Plaintiff's, Regulatory Compliance Associates, Inc. ("RCA" or "Plaintiff"), Motion for Default Judgment against Defendant, Kimberlee Washburn ("Washburn" or "Defendant") on June 23, 2017. The Court has considered oral argument, the pleadings, affidavits, declarations and all other documents and submissions of record, and has determined that due process has been served. Therefore, **IT IS HEREBY ADJUDGED:**

1.  Defendant is in default and the allegations of the Complaint are deemed admitted;

2.  The Court finds that the terms of the Confidentiality Agreement, attached to the Plaintiff's First Amended Complaint, are valid and enforceable;

3.  Judgment is entered in favor of RCA and against Washburn on Counts III, IV and V of the Plaintiff's First Amended Complaint in the amount of $67,990.00;

4.  Judgment is entered in favor of RCA and against Washburn for punitive damages in the amount of $135,980.00; AND

5.  Judgment is entered in favor of RCA for its cause of action for Injunctive Relief, and the Court's Order for Preliminary Injunctive Relief dated February 17, 2017 is hereby converted to a permanent injunction, which, *inter alia,* enjoins Washburn from transferring,

copying, distributing, reproducing, discussing, sharing, and/or otherwise disseminating the Confidential Information and/or the Confidential Personalty, as described in Plaintiff's Motion for Preliminary Injunction filed in the above-captioned action, in any form or by any medium to any parties other than RCA.

Dated June_____, 2017

BY THE COURT:

_____
Honorable Chad G. Kerkman
Kenosha County Civil Court Judge

Electronically signed by Judge Chad G. Kerkman, Circuit Court Branch 8

Circuit Court Judge

07/10/2017

This is a final order for purposes of appeal.

Drafted by:
C. Douglas Moran (Wis. Bar No. 1091893)
CARLSON DASH, LLC
10411 Corporate Dr., Ste. 100
Pleasant Prairie, WI 53158
Telephone: 262-857-1600
Facsimile: (312) 382-1619
cdmoran@carlsondash.com

2

# EXHIBIT C

**OFFICIAL RECEIPT**



**Office of the Kane County Circuit Court Clerk**
**Thomas M. Hartwell, Clerk**
**540 S. Randall Rd.**
**St. Charles, IL 60174**
**Phone: (630) 232-3413**
**Fax: (630) 208-2172**

Payor
Carlson Dash LLC

Receipt No.
**2017-71089900**

Judge
Clancy Boles, Susan

Transaction Date
08/7/2017

| Description | Amount Paid |
|---|---|
| Regulatory Compliance Associate Inc | |
| 17-L-000425 | |
| Regulatory Compliance Associate Inc v. Kimberlee Washburn | |
| Registration of Foreign Judgment Filing Fees 160/30 | 262.00 |
| Access to Justice Fee | 2.00 |
| Arbitration Fee | 8.00 |
| Census Pop Incr Res #11-270 | 30.00 |
| Clerk Fee | 160.00 |
| Court Security | 48.00 |
| Court System | 5.00 |
| eBusiness Fee | 9.00 |
| **SUBTOTAL** | **262.00** |
| Remaining Balance Due:  $0.00 | |

| **PAYMENT TOTAL** | **262.00** |
|---|---|

| Check (Ref #2454) Tendered | 262.00 |
|---|---|
| Total Tendered | **262.00** |
| Change | 0.00 |

| 08/07/2017 | Cashier | Audit |
|---|---|---|
| 03:18 PM | Station CICCH161 | 37175326 |

**OFFICIAL RECEIPT**



# EXHIBIT D

⚠️ Caution

As of: January 18, 2022 7:09 PM Z

## *Clear Channel Outdoor, Inc. v. Nikitas (In re Nikitas)*

United States Bankruptcy Court for the Northern District of Illinois, Eastern Division

June 6, 2005, Decided ; June 6, 2005, Filed

Chapter 7, No. 04 B 18560, No. 04 A 3430

### Reporter

326 B.R. 127 *; 2005 Bankr. LEXIS 996 **; 44 Bankr. Ct. Dec. 240

In re: JAMES NIKITAS, Debtor. CLEAR CHANNEL OUTDOOR, INC., Plaintiff, v. JAMES NIKITAS, Defendant.

# Case Summary

### Procedural Posture

Plaintiff creditor brought an adversary proceeding against defendant debtor asserting that the debt as established in an arbitration proceeding was nondischargeable under *11 U.S.C.S. § 523(a)(2)(A)* as a debt based upon fraud. The creditor brought a motion for summary judgment based on collateral estoppel.

### Overview

Even though the debtor made no appearance, an arbitrator issued an award finding that the debtor and his company fraudulently induced the creditor to enter into an agreement. A state court confirmed the award by a default judgment. Although objections to dischargeability could be based upon collateral estoppel, in this case Illinois law applied, and the creditor's motion was denied. Under Illinois law, collateral estoppel applied only when a point or question was actually litigated and determined. In light of the repeated statement by Illinois courts that an issue had to be actually litigated in a genuinely adversarial proceeding before it could be preclusive, the court found that the most reasonable conclusion was that Illinois adhered to the majority rule that a default judgment had no collateral estoppel effect. Thus, because the creditor based its summary judgment motion on collateral estoppel, neither the arbitration nor the state court confirming the action was a proceeding where the parties disputed the issues and the trier of fact resolved them. Thus, the matter was not actually litigated.

### Outcome

The court denied the creditor's motion for summary judgment.

**Counsel:** **[\*\*1]** James Nikitas, Pro se.

Attorneys for Clear Channel Outdoor, Inc.: Lora E. Minichillo, Christopher R. Parker, Michael Best & Friedrich LLP, Chicago, IL; Richard K. Hellerman, Arnstein & Lehr, LLP, Chicago, IL.

**Judges:** A. Benjamin Goldgar, United States Bankruptcy Judge.

**Opinion by:** A. Benjamin Goldgar

# Opinion

### [\*129] MEMORANDUM OPINION

This matter is before the court on the motion of Clear

326 B.R. 127, *129; 2005 Bankr. LEXIS 996, **1

Channel Outdoor, Inc. ("Clear Channel") for summary judgment on its adversary complaint against debtor James Nikitas. Clear Channel contends that facts determined in an arbitration render Nikitas' debt to Clear Channel nondischargeable as a debt based on fraud, *see 11 U.S.C. § 523(a)(2)(A)*, and that Nikitas is collaterally estopped to relitigate those facts. For the reasons that follow, Clear Channel's motion for summary judgment is denied.

### 1. Jurisdiction

The court has subject matter jurisdiction over this case pursuant to *28 U.S.C. §§ 1334(a)* and *157(a)* and the district court's Internal Operating Procedure 15(a). This is a core proceeding. *28 U.S.C. § 157(b)(2)(I)*.

### 2. Facts

The following facts appear to be undisputed. **[**2]** Clear Channel is in the business of marketing and placing advertising on what it terms "outdoor media" - also known as "signs." Nikitas was president and principal shareholder of an entity called London Limousines ("London"). In 1998, Clear Channel entered into an agreement with London. Under the agreement, Clear Channel paid $ 550,000 for advertising space on double-decker tour buses that London represented it owned and operated in New York. It turned out, however, that London did not in fact own any double-decker buses in New York. On making this discovery, Clear Channel rescinded the agreement and demanded its money back from London - and from Nikitas, who had guaranteed the payment of certain sums due upon the agreement's termination.

When Nikitas and London failed to pay Clear Channel the amounts it demanded, Clear Channel served Nikitas and London with an arbitration demand, as it was

entitled to do under the agreement. In response, a lawyer identifying himself as counsel for Nikitas contacted Clear Channel and attempted to settle the dispute. When the dispute did not settle, Clear Channel filed an action in the Circuit Court of Cook County to compel arbitration. Neither Nikitas, **[**3]** London, nor counsel for either one appeared in the action, but the same lawyer purporting to represent Nikitas again contacted Clear Channel to discuss a possible settlement. Still the matter did not settle, and the circuit court entered an order compelling the arbitration.

In August 2002, the arbitrator convened a hearing. Although Nikitas and London had notice of the hearing, they failed to appear, answer, or participate. Despite their absence, Clear Channel submitted evidence - documents and witnesses - at the hearing. On the basis of that evidence, the arbitrator issued an award finding that Nikitas and London had fraudulently induced Clear Channel to enter into the agreement. The arbitrator rescinded the agreement and awarded Clear Channel $ 550,000, along with $ 10,049 in attorneys' fees and costs.

Clear Channel then returned to the circuit court and moved to confirm the arbitration award. Nikitas and London had notice of the motion but did not appear. The circuit court accordingly entered judgment confirming the award.

When Clear Channel took steps to collect its judgment, Nikitas sought protection under chapter 7 of the Bankruptcy Code. In August 2004, Clear Channel commenced **[**4]** this adversary proceeding asserting under *section 523(a)(2)(A)* that Nikitas' debt established in the arbitration proceeding **[*130]** was nondischargeable. Clear Channel now moves for summary judgment on its complaint. [1] Clear Channel

---

[1] Nikitas appeared in the adversary proceeding *pro se* and

Case 21-11431    Doc 38-1    Filed 01/18/22    Entered 01/18/22 14:21:54    Desc Exhibit
A-F    Page 13 of 26

Page 3 of 6

326 B.R. 127, *130; 2005 Bankr. LEXIS 996, **4

contends that summary judgment should be entered based on the doctrine of collateral estoppel (or issue preclusion, as it is known these days). [2]

## [**5] 3. Discussion

Clear Channel is not entitled to summary judgment. Under Illinois law, collateral estoppel applies only to matters "actually litigated" in an earlier proceeding. Because a default judgment was entered against Nikitas in the arbitration and in the circuit court, his fraud was not "actually litigated." Therefore, the findings of the arbitrator have no collateral estoppel effect here.

As Clear Channel correctly notes, objections to dischargeability under *section 523* can be based on collateral estoppel. *Grogan v. Garner, 498 U.S. 279, 284-85 n.11, 112 L. Ed. 2d 755, 111 S. Ct. 654 (1991)*. Whether the relevant collateral estoppel principles are state or federal, however, depends on whether the judgment claimed as preclusive is state or federal. Federal courts are obligated to give state judicial proceedings the "same full faith and credit" those proceedings would have in the courts of that state. *28 U.S.C. § 1738*. Hence, "the preclusive effect of a state

_____

filed an answer. He also had notice of the summary judgment motion and was in court when the briefing schedule was set. True to form, however, Nikitas has not responded to the motion.

[2] Clear Channel relies on collateral estoppel because nondischargeability under *section 523(a)(2)(A)* is a matter within the exclusive jurisdiction of the bankruptcy court and cannot be raised in state courts. *See 11 U.S.C. § 523(c)(1)*. If that were not the case, the arbitration award and subsequent circuit court judgment would arguably be res judicata. (And if they were, it would make no difference that the award and judgment had been entered by default. *See Housing Auth. v. Y.M.C.A. of Ottawa, 101 Ill. 2d 246, 254, 461 N.E.2d 959, 963, 78 Ill. Dec. 125 (1984)*.)

court judgment in a federal case is a matter of state rather than of federal law." *Brokaw v. Weaver, 305 F.3d 660, 669 (7th Cir. 2002)* (internal quotation omitted). Because **[**6]** Clear Channel relies on the findings of an Illinois state court - or more accurately an Illinois arbitrator whose findings an Illinois state court confirmed - Illinois law on collateral estoppel presumably governs. [3]

Under Illinois law, collateral estoppel applies "when a party, or someone in privity with a party, participates in two separate and consecutive cases arising on different causes of action and some controlling fact or question material to the determination of both causes has been adjudicated against that party in the former suit by a court of competent jurisdiction." *Nowak v. St. Rita High School, 197 Ill. 2d 381, 389-90, 757 N.E.2d 471, 477, 258 Ill. Dec. 782 (2001)*. The doctrine has three basic requirements: **[**7]** (1) a prior case presented an identical issue; (2) the case ended in a final judgment; and (3) the party against whom estoppel is asserted was a party to the case. *Du Page Forklift Serv., Inc. v. Material Handling Servs., Inc., 195 Ill. 2d 71, 77, 744 N.E.2d 845, 849, 253 Ill. Dec. 112 (2001)*.

Collateral estoppel only applies, however, to a "point or question *actually litigated* and determined." *Y.M.C.A., [*131] 101 Ill. 2d at 252, 461 N.E.2d at 962* (emphasis in original) (internal quotation omitted); *see also People v. Williams, 138 Ill. 2d 377, 393, 563 N.E.2d 385, 392, 150 Ill. Dec. 498 (1990)* (noting that collateral estoppel is limited to "the precise factual or legal issues actually litigated and decided"). "Actually litigated" does

_____

[3] If Clear Channel believes some other law governs, it does not say so. When parties do not make an issue out of choice of law, the court has no obligation to undertake its own independent investigation. *In re Stoecker, 5 F.3d 1022, 1029 (7th Cir. 1993)*.

not mean "thoroughly litigated," but it does mean "that the parties disputed the issue and the trier of fact resolved it." *Taylor v. Peoples Gas Light & Coke Co., 275 Ill. App. 3d 655, 663, 656 N.E.2d 134, 141, 211 Ill. Dec. 942 (1st Dist. 1995)*; *see also Raper v. Hazelett & Erdal, 114 Ill. App. 3d 649, 653, 449 N.E.2d 268, 271, 70 Ill. Dec. 394 (1st Dist. 1983)*.

In **[**8]** this case, the judgment confirming the award was a final judgment. *See Norman Kern & Co. v. McNabola (In re McNabola), 43 B.R. 362, 364 (Bankr. N.D. Ill. 1984)* (noting that arbitration award can be a final judgment for purposes of collateral estoppel). Nikitas was also a party both to the arbitration and to the circuit court action that led to the arbitration award's confirmation. That leaves as the critical question whether the issue of fraud was "actually litigated" in the relevant sense.

The answer is no. Although Illinois law on the subject is neither well-developed nor clear, it appears Illinois subscribes to the majority view that a default judgment cannot form the basis for collateral estoppel. *See In re Catt, 368 F.3d 789, 791 (7th Cir. 2004)* (noting that the opposing view, apparently held in Indiana, is the minority). This is so because by definition nothing is "actually litigated" when a default is entered; the defendant loses because he fails to defend, not on the merits of the case itself. *See Arizona v. California, 530 U.S. 392, 414, 147 L. Ed. 2d 374, 120 S. Ct. 2304 (2000)* (calling this "basic res judicata doctrine"); *Restatement **[**9]** (Second) of Judgments § 27* (1982).

The Illinois Supreme Court has yet to address the collateral estoppel effect of default judgments, coming no closer than its observation in *Y.M.C.A.* that "some courts have held that default judgments have limited preclusive effects under the doctrine of collateral estoppel." *See Y.M.C.A., 101 Ill. 2d at 254, 461 N.E.2d at 963*. In what appears to be the sole intermediate

appellate decision on the subject, though, the Illinois Appellate Court squarely held that a default judgment has no collateral estoppel effect. In *S & S Automotive v. Checker Taxi Co., 166 Ill. App. 3d 6, 520 N.E.2d 929, 117 Ill. Dec. 578 (1st Dist. 1988)*, the court declined to find that a default judgment on the question of coverage in an insurer's declaratory judgment action barred the plaintiffs in a later negligence action from disputing questions of agency. The court read the otherwise neutral statement in *Y.M.C.A.* as signaling "strong support" for the rule that default judgments have no collateral estoppel effect. *Id. at 9, 520 N.E.2d at 931-32*. Citing this rule and the requirement that an issue must have been "actually **[**10]** litigated," the court declared: "We find that collateral estoppel does not apply here because the agency issue was not actually litigated prior to the entry of the default judgment." *Id. at 8, 520 N.E.2d at 930*.

No other Illinois decision has directly addressed the subject. The principal and most recent decision purporting to do so, *In re Rogers, 297 Ill. App. 3d 750, 697 N.E.2d 1193, 232 Ill. Dec. 263 (2nd Dist. 1998)*, does declare that collateral estoppel may be applied "even where a default judgment has been entered provided no injustice results from the application of the doctrine." *Id. at 755, 697 N.E.2d at 1197*. But that declaration **[*132]** was dicta: the court in *Rogers* held that the judgment in the earlier action barred the second action on the basis of res judicata. *Id.* The court mentioned collateral estoppel only as an additional and alternative ground for its decision. *See id. at 755-56, 697 N.E.2d at 1197-98*.

Even that ground was questionable. The decisions the *Rogers* court cited for its declaration - *Herriford v. Boyles, 193 Ill. App. 3d 947, 550 N.E.2d 654, 140 Ill. Dec. 769 (3rd Dist. 1990)*, **[**11]** and *Coronet Ins. Co. v. Booker, 158 Ill. App. 3d 466, 511 N.E.2d 793, 110 Ill.*

*Dec. 616 (1st Dist. 1987)* - in fact provide no support. *Herriford* did not involve a default: the earlier action claimed to have collateral estoppel effect on the question of damages was an arbitration at which the question was actually litigated and decided. *Herriford, 193 Ill. App. 3d at 948-49, 550 N.E.2d at 656*. The opinion nowhere indicates that the opposing party failed to appear and contest the claim. *Coronet* did involve a default judgment - in fact two, one in an arbitration and another in a later circuit court action. *Coronet, 158 Ill. App. 3d at 467, 511 N.E.2d at 795*. But *Coronet's* holding is limited to the timing of the motion to vacate the circuit court default; only after ruling on that issue (and commenting that it "need not address the merits") did the court reach the collateral estoppel effect of the default in the arbitration. *Id. at 470-71, 511 N.E.2d at 796-97*. The cursory discussion that followed, all of it dicta, did not mention either the "actually litigated" requirement or the usual rule that default judgments **[**12]** have no collateral estoppel effect. [4] *Id. at 471, 511 N.E.2d at 796-97*.

The other Illinois decision occasionally cited for the proposition that collateral estoppel applies to default judgments, *Grisanzio v. Bilka, 158 Ill. App. 3d 821, 511 N.E.2d 762, 110 Ill. Dec. 585 (2nd Dist. 1987)*, is even less relevant and helpful. *Grisanzio* did involve a default judgment, and the court did discuss the doctrines of res judicata and collateral estoppel at some length. *Id. at 824-27, 511 N.E.2d at 764-66*. In the end, though, the court based its decision, not on collateral estoppel, but on res **[**13]** judicata: "Although the judgment against

the corporation was by default, it is entitled to the same preclusive effect under the doctrine of *res judicata* as any other judgment." *Id. at 827, 511 N.E.2d at 766*; see also *id. at 829, 511 N.E.2d at 767* (stating that "the second suit being barred by the doctrine of *res judicata*, the decision of the trial court should be affirmed").

Given the sparse and confusing authority on the subject, faulty assessments of Illinois law on collateral estoppel and default judgments are common. Citing *Rogers* and *Grisanzio*, the Fifth Circuit mistakenly concluded that "the doctrine of collateral estoppel may be applied to default judgments under Illinois law." See *Caton v. Trudeau (In re Caton), 157 F.3d 1026, 1028 (5th Cir. 1998)*. Without discussing *S & S Automotive*, a Missouri bankruptcy court wrongly decided that a split among Illinois bankruptcy courts over the collateral estoppel effect of default judgments represented the state of the law in Illinois. *Meyer v. Asbury (In re Asbury), 195 B.R. 412, 416 (Bankr. E.D. Mo.* **[**133]** *1996)* (noting that the court "found no Illinois **[**14]** cases which have decided whether a default judgment satisfies the 'actually litigated' requirement under Illinois law").

But the bankruptcy court decisions in this area are not reliable indicators of Illinois law, either. More often than not, the decisions fail to mention state law and instead apply the federal rule that default judgments have no collateral estoppel effect. See, e.g., *Walker v. Contimortgage (In re Walker), 232 B.R. 725, 732-33 (Bankr. N.D. Ill. 1999)*; *Schaffer v. Dempster (In re Dempster), 182 B.R. 790, 799 (Bankr. N.D. Ill. 1995)*; *Bishop v. Herwig (In re Herwig), 77 B.R. 662, 664 (Bankr. S.D. Ill. 1987)*. In a case reaching the opposite result, the court mistakenly relied on *Y.M.C.A* and *Grisanzio* (neither of which addressed the question) for the proposition that in Illinois "a judgment by default is entitled to the same preclusive effect as any other judgment." *Illinois Dep't of Employment Sec. v. Winston (In re Winston), 114 B.R. 566, 571 (Bankr. N.D. Ill.*

---

[4] In both *Herriford* and *Coronet*, moreover, collateral estoppel was invoked against a party who had *participated* in an arbitration and obtained an award, not against a party who defaulted by failing to participate. See *Herriford, 193 Ill. App. 3d at 953-54, 550 N.E.2d at 659*, *Coronet, 158 Ill. App. 3d at 470-71, 511 N.E.2d at 796-97*.

*1990).*

In light of the Illinois courts' repeated statement that an issue must have been "actually litigated" in a genuinely adversarial **[\*\*15]** proceeding before it can be preclusive, *see, e.g., Taylor, 275 Ill. App. 3d at 663, 656 N.E.2d at 141*, and with *S & S Automotive* the only decision truly addressing the collateral estoppel effect of default judgments, the most reasonable conclusion is that Illinois adheres to the majority rule: default judgments have no collateral estoppel effect.

That conclusion forecloses Clear Channel's effort to obtain summary judgment on the basis of collateral estoppel. The motion is based on an award from an arbitration hearing where Nikitas defaulted, an award subsequently confirmed in a circuit court action where Nikitas also defaulted. Summary judgment is foreclosed even though Clear Channel presented evidence in the arbitration on which the arbitrator based his award. A proceeding of that kind is not a trial but rather "a travesty of a trial, lacking . . . an adversary dimension." *Catt, 368 F.3d at 792*. It is "no better, really, than a default proceeding." *Id.* (holding, however, that such a proceeding is enough under Indiana preclusion law).

Neither the arbitration nor the circuit court action here was a proceeding where "the parties disputed the **[\*\*16]** issues and the trier of fact resolved [them]." *Taylor, 275 Ill. App. 3d at 663, 656 N.E.2d at 141*. Therefore, the issues in those proceedings were not "actually litigated" as the doctrine of collateral estoppel requires. *Williams, 138 Ill. 2d at 393, 563 N.E.2d at 392*. Clear Channel's motion must be denied.

## 4. Conclusion

The motion of Clear Channel Outdoor, Inc. for summary judgment on its adversary complaint against debtor James Nikitas is denied. A separate order will be entered consistent with this opinion.

Dated: June 6, 2005

ENTER:

A. Benjamin Goldgar

United States Bankruptcy Judge

---

End of Document

# EXHIBIT E

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
Eastern Division

| | |
|---|---|
| In Re: | ) BK No.: 18-16345 |
| | ) |
| KIMBERLEE WASHBURN | ) Chapter: 7 |
| | ) |
| | ) Honorable Janet S. Baer |
| | ) Kane |
| Debtor(s) | ) |
| REGULATORY COMPLIANCE ASSOCIATES, INC. | ) Adv. No.: 18-00246 |
| | ) |
| Plaintiff(s) | ) |
| KIMBERLEE WASHBURN | ) |
| | ) |
| Defendant(s) | ) |

## DEFAULT JUDGMENT ORDER

This matter coming to be heard on the motion of Regulatory Compliance Associates, Inc. ("RCA") for entry of default judgment against ("Motion"), due notice having been given, and the Court being fully advised in the premises;

IT IS HEREBY ORDERED THAT:

1. The Motion is granted as set forth herein.

2. The Court finds that the debt owed to RCA by Kimberlee Washburn in the amount of $203,970.00 is not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

Enter: Janet S. Baer

Honorable Janet S. Baer
United States Bankruptcy Judge

Dated: JAN - 9 2019
Prepared by:
Kurt M. Carlson ARDC #6236568
C. Douglas Moran ARDC #6310780
CARLSON DASH, LLC
216 S. Jefferson St., Suite 504

Form G6 (20170308_apo)

Chicago, IL 60661
Telephone: 312-382-1600

# EXHIBIT F

 Cited

As of: January 18, 2022 7:10 PM Z

## *Creech v. Viruet (In re Creech)*

United States Court of Appeals for the Eleventh Circuit

August 7, 2019, Decided

No. 18-12584 Non-Argument Calendar

**Reporter**

782 Fed. Appx. 933 *; 2019 U.S. App. LEXIS 23560 **; 67 Bankr. Ct. Dec. 160; 2019 WL 3714765

In re: CHADWICK CREECH, YUWEN CREECH, Debtor.CHADWICK CREECH, YUWEN CREECH, Plaintiffs—Appellants, versus WILFRED C. VIRUET, CYNTHIA M. VIRUET, Defendants—Appellees.

**Notice:** PLEASE REFER TO *FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1* GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**Prior History:** [**1] Appeal from the United States District Court for the Middle District of Florida. D.C. Docket Nos. 6:17-cv-01847-RBD; 6:13-bkc-04253-CCJ.

**Disposition:** AFFIRMED.

## Case Summary

### Overview

HOLDINGS: [1]-The default judgment qualified for issue preclusion under Illinois law because the issue was actually litigated where the court specifically found that the discovery was relevant to the creditors' claims that the debtors committed fraud and violated Illinois and Florida securities laws; [2]-The bankruptcy court was correct in ruling that the debt was non-dischargeable pursuant to *11 U.S.C.S. § 523(a)(19)* because the default judgment was necessarily for the violation of securities laws and debtors' debt was memorialized in a judgment from a judicial proceeding—specifically, the

default judgment from the Illinois state court.

### Outcome

Judgment affirmed.

**Counsel:** For CHADWICK CREECH, YUWEN CREECH, Plaintiffs - Appellants: Raymond J. Rotella, Kosto & Rotella, PA, ORLANDO, FL.

For WILFRED C. VIRUET, CYNTHIA M. VIRUET, Defendants - Appellees: Edward M. Fitzgerald, Holland & Knight, LLP, ORLANDO, FL.

**Judges:** Before TJOFLAT, CARNES, and JORDAN, Circuit Judges.

## Opinion

[*934] PER CURIAM:

This case presents two questions. First, whether a default judgment entered as a discovery sanction in Illinois state court meets the requirements of issue preclusion under Illinois law. Second, whether a debt resulting from that default judgment is non-dischargeable in bankruptcy pursuant to *11 U.S.C. § 523(a)(19)*. We hold that issue preclusion applies, and the debt is non-dischargeable.

782 Fed. Appx. 933, *934; 2019 U.S. App. LEXIS 23560, **1

I.

Illinois residents Wilfred and Cynthia Viruet invested in Streamone, LLC, a company owned by Florida residents Chadwick and Yuwen Creech. When the Viruets were unable to recover their investment, they brought a suit in Illinois state court against the Creeches. Among other things, the Viruets alleged that the Creeches sold them unregistered securities without a license and made material **[**2]** misrepresentations about the investment, violating Illinois and Florida securities laws. They also alleged that this conduct amounted to common law fraud.

The Creeches answered the complaint, asserted affirmative defenses, and filed and responded to motions. But they refused to respond to interrogatories or to produce relevant documents despite the Court's orders to do so. Eventually, the Court sanctioned the Creeches by entering a default judgment against them for $981,010.63 plus $547 in costs. The Creeches **[*935]** appealed, but an Illinois appellate court later dismissed the appeal for want of prosecution.

Subsequently, the Securities Department of the Illinois Secretary of State brought an administrative action against the Creeches and their companies: Streamone, LLC and Streamone FS, LLC. The Secretary accused the Creeches of violating Illinois securities laws based on the same conduct complained of in the state suit: making material misrepresentations to the Viruets while selling unregistered securities in Streamone without a license. After a contested three-day hearing, the Secretary entered an order, including findings of fact and conclusions of law, that prohibited the Creeches and **[**3]** the Streamone companies from selling securities in Illinois, and fined Chadwick Creech and the Streamone companies $10,000 each.

After the default judgment but before the administrative order, the Creeches filed for bankruptcy. The Viruets intervened, asking the Bankruptcy Court to find that the debt owed to them from the state court judgment was not dischargeable. They argued that *11 U.S.C. § 523(a)(19)* protected their debt from discharge, and that the Creeches were precluded from relitigating the debt because of the default judgment and the administrative order.[1] The Creeches maintain that neither the state court judgment nor the administrative order meets the requirements for issue preclusion. The Creeches want to prove they are not liable for the alleged conduct and thus that the purported debt is invalid. The Bankruptcy Court ruled that the Creeches were precluded from challenging the debt, and that the debt was non-dischargeable. The District Court affirmed, and so do we.

II.

On appeals from bankruptcy court, "we review the bankruptcy court's factual findings for clear error, and its legal conclusions *de novo.*" *In re Lunsford, 848 F.3d 963, 966 (11th Cir. 2017)* (quotation omitted).

A.

We address the Creeches' arguments about issue preclusion first. It **[**4]** is now well-settled that issue preclusion applies to bankruptcy proceedings. *See Grogan v. Garner, 498 U.S. 279, 284 n.11, 111 S. Ct. 654, 658 n.11, 112 L. Ed. 2d 755 (1991)*. When asked to determine the preclusive effect of a judgment, we "refer to the preclusion law of the State in which judgment was rendered." *Marrese v. Am. Acad. of Orthopaedic*

---

[1] The Illinois Secretary of State entered the administrative order after the Creeches' filed for bankruptcy but before the bankruptcy court ruled on discharge.

_Surgeons, 470 U.S. 373, 380, 105 S. Ct. 1327, 1332, 84 L. Ed. 2d 274 (1985)_; _see also_ 28 U.S.C. § 1738 (2018). Thus, we look to Illinois law on issue preclusion.[2]

[*936] Under Illinois law, the "minimum threshold requirements" for issue preclusion are that the issue in the prior proceeding must have been (1) identical to the present one, (2) actually litigated, (3) necessarily decided in a final judgment on the merits, and (4) asserted against the same party or one in privity. _See Nowak v. St. Rita High Sch., 197 Ill. 2d 381, 757 N.E.2d 471, 477-78, 258 Ill. Dec. 782 (Ill. 2001)_. The Creeches argue that neither the state court judgment nor the administrative order meets these requirements.

For the state court judgment, the Creeches maintain that the [**5] issue—whether they violated securities laws and defrauded the Viruets—was neither actually litigated nor decided in a final judgment on the merits. They contest whether an issue can ever be actually litigated or decided in a final judgment when the action ends in a default judgment.

Illinois law is clear that a default judgment is considered a final judgment on the merits of "the ultimate claim or

---

[2] The Viruets direct us to one of our precedents on bankruptcy discharges, which held that issue preclusion applied to default judgments that were actually litigated:

> Where a party has substantially participated in an action in which he had a full and fair opportunity to defend on the merits, but subsequently chooses not to do so, and even attempts to frustrate the effort to bring the action to judgment . . . a district court [may] apply the doctrine of collateral estoppel to prevent further litigation of the issues resolved by the default judgment in the prior action.

_In re Bush, 62 F.3d 1319, 1325 (11th Cir. 1995)_. But _Bush_ was applying federal common law. _Id. at 1323 & n.6_. Because we must apply Illinois law on preclusion, _Bush_ is inapposite.

demand presented in the complaint." _See Hous. Auth. for La Salle Cty. v. Y.M.C.A. of Ottawa, 101 Ill. 2d 246, 461 N.E.2d 959, 963, 78 Ill. Dec. 125 (Ill. 1984)_. The ultimate claim presented in the Viruets' complaint was violations of Illinois and Florida securities laws. The default judgment, then, is final on that.

Illinois law is less clear on whether an issue can be actually litigated in an action ending in a default judgment. It is important to distinguish between different types of default judgments. In Illinois, the typical default judgment is entered when a defendant fails to appear or answer. _735 Ill. Comp. Stat. 5/2-1301_. But Illinois also allows its courts to enter a default judgment as a sanction for violating a discovery order. _Ill. Sup. Ct. R. 219(c)(v)_. Necessarily, a default judgment entered as a discovery sanction would only come about when the litigation has progressed into the discovery phase. And a case that has progressed into the discovery [**6] phase may well involve issues that were actually litigated. In other words, as it relates to whether an issue was actually litigated, not all default judgments are created equal.

The Illinois Supreme Court has never decided whether issue preclusion applies to default judgments. The closest it came was in dicta noting that "[s]ome courts have held that default judgments have limited preclusive effects under the doctrine of collateral estoppel." _Y.M.C.A. of Ottawa, 461 N.E.2d at 963_. An Illinois appellate court found that "collateral estoppel does not apply here because the agency issue was not actually litigated prior to the entry of the default judgment." _S & S Auto. v. Checker Taxi Co., 166 Ill. App. 3d 6, 520 N.E.2d 929, 930, 117 Ill. Dec. 578 (Ill. App. Ct. 1988)_. But _Checker Taxi_ dealt with a typical default judgment, not one entered as a discovery sanction. In that case, the plaintiff and defendant had both been co-defendants in a previous case. _Id._ One of the co-defendants did not appear in the previous case, and neither bothered to

answer the complaint. *Id*. In those circumstances, the court rightly determined that the issue of whether one of the co-defendants was the agent of the other had not been actually litigated in the previous case. *Id. at 931*. The court did not say that issue preclusion could never apply to a default judgment. **[**7]**

The Creeches point to other courts' holdings that issue preclusion does not apply to default judgments under Illinois law. *See In re Nikitas, 326 B.R. 127, 131 (Bankr. N.D. Ill. 2005)* ("Although Illinois law on the subject is neither well-developed nor clear, it appears Illinois subscribes to the majority view that a default judgment cannot form the basis for collateral **[*937]** estoppel."); *see also In re Binns, 328 B.R. 126, 129-30 (B.A.P. 8th Cir. 2005)* (holding same); *Raab Sales, Inc. v. Domino Amjet, Inc., 530 F. Supp. 2d 1192, 1197-98 (D. Kan. 2008)* (same); *In re Jacobs, 448 B.R. 453, 469-70 (Bankr. N.D. Ill. 2011)* (same). But all of these cases address a typical default judgment, where the defendant fails to appear or answer the complaint. None of these cases address a default judgment entered as a discovery sanction after the case has been substantially litigated. (Also, none of these cases are from Illinois courts, so their interpretation of Illinois law is not binding.) We thus find no rule of Illinois law saying that a default judgment can never receive preclusive effect, even one entered after substantial litigation.

Nor do we think Illinois would adopt such a rule. The relevant question is not the title of the order but whether the issue was actually litigated. On this question, there is a difference between a default judgment entered when the defendant fails to appear or answer the complaint, and one entered after the defendant **[**8]** appeared, answered the complaint, asserted affirmative defenses, and filed and answered motions. We do not believe that Illinois would decide that, in the latter situation, the issue could never be actually litigated. To decide so would allow parties to substantially litigate a

claim, realize the case was not going their way, refuse to participate in the case any further, draw a default judgment, and then escape the preclusive effect of that judgment because it was entered by default. There is no reason to believe that Illinois would invite such gamesmanship.

Here, the Creeches and the Viruets actually litigated in Illinois state court whether the Creeches violated securities laws and defrauded the Viruets by selling unregistered securities without a license and making material misrepresentations. The Viruets alleged as much in their complaint. The docket from the Illinois state court shows that the Creeches answered the complaint, they filed affirmative defenses, and they submitted exhibits and affidavits. They also filed motions, including a motion to dismiss and a motion for summary judgment. For part of the proceedings, they were represented by counsel. But, after a year of litigation, **[**9]** the Creeches refused to comply with the Court's discovery orders, and the Court entered a default judgment as a discovery sanction. In its order, the Court specifically found that the discovery was relevant to the Viruets' claims that the Creeches committed fraud and violated Illinois and Florida securities laws. Based on this activity, we find that the issue was actually litigated, and the default judgment qualifies for issue preclusion under Illinois law.

Because the Creeches are precluded from challenging their liability for the debt by the state court judgment, we do not reach the question of whether the Creeches would also be precluded by the administrative order.

**B**.

Next, we examine whether the Bankruptcy Court was correct in ruling that the debt is non-dischargeable pursuant to *11 U.S.C. § 523(a)(19)*. Normally, a person in bankruptcy can get a "fresh start" by discharging his

or her debts. *See Grogan, 498 U.S. at 286, 111 S. Ct. at 659*. But a fresh start is available only to the "honest but unfortunate debtor." *Id. at 287, 111 S. Ct. at 659* (quotation omitted). Accordingly, Congress has specified certain debts that cannot be discharged in *11 U.S.C. § 523(a)*. One of these exceptions is for debts resulting from court judgments **[*938]** or administrative orders for violating securities laws. *See § 523(a)(19)*.

**[**10]** The statute reads as follows:

(a) A [bankruptcy] discharge . . . does not discharge an individual debtor from any debt—

. . .

(19) that—

(A) is for—

(i) the violation of any of the Federal [or] State securities laws, or any regulation or order issued under such Federal or State securities laws; or

(ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and

(B) results, before, on, or after the date on which the petition was filed, from—

(i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;

(ii) any settlement agreement entered into by the debtor; or

(iii) any court or administrative order for any damages, fine penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

*§ 523(a)(19)*. Essentially, the statute has two requirements: first, the debt must be for the violation of securities laws or a fraud in connection with the purchase or sale of a security; second, the debt must be memorialized in a judicial or administrative order or

settlement agreement. *Id.; see also In re Minardi, 536 B.R. 171, 192 (Bankr. E.D. Tex. 2015); In re Pujdak, 462 B.R. 560, 575 (Bankr. D.S.C. 2011); In re Jafari, 401 B.R. 494, 496 (Bankr. D. Colo. 2009)*. If these two requirements are met, the debt is not dischargeable.

The first requirement asks whether the debt was for the violation of securities laws. To answer this question, we look behind "the default judgment to the text of the complaint to determine whether the findings required for non-dischargeability were sufficiently plead to have **[**11]** been necessarily decided . . . ." *In re Tills, 419 B.R. 444, 456 (Bankr. S.D. Cal. 2009)*. The Viruets' complaint specifically alleged violations of Illinois and Florida securities laws, as well as common law fraud, all for selling unregistered securities and for selling securities without a license. Consequently, the default judgment was necessarily for the violation of securities laws.

The second requirement is also satisfied: the Creeches' debt is memorialized in a judgment from a judicial proceeding—specifically, the default judgment from the Illinois state court. After all, a default judgment is no less a judgment for being entered in default. Thus, both requirements are met, and the debt is not dischargeable.[3]

**AFFIRMED.**

_____

[3] The Viruets ask us to follow several other courts in finding that *§ 523(a)(19)* preempts issue preclusion law. *See, e.g., Tripodi v. Welch, 810 F.3d 761, 767 (10th Cir. 2016); In re Boccarsi, 578 B.R. 800, 811 (Bankr. N.D. Ill. 2017); In re Minardi, 536 B.R. 171, 192 (Bankr. E.D. Tex. 2015); In re Friedman, 531 B.R. 741, 746 (Bankr. N.D. Ill. 2015); In re Pujdak, 462 B.R. 560, 578 (Bankr. D.S.C. 2011)*. Because we resolve the case on other grounds, we decline to reach this question.

782 Fed. Appx. 933, *938; 2019 U.S. App. LEXIS 23560, **11

End of Document